Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| LUIS VALENTÍN NEGRÓN<br><br>*Recurrente*<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>*Recurrida* | TA2025RA00205 | Revisión de Decisión Administrativa procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 145345<br><br>Sobre: No Conceder Libertad Bajo Palabra |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de octubre de 2025.

Comparece ante nos Luis Valentín Negrón (señor Valentín Negrón o recurrente) mediante recurso de *Revisión de Decisión Administrativa* y solicita la revocación de la *Resolución*[1] emitida el 3 de julio de 2025[2] por la Junta de Libertad Bajo Palabra (JLBP o recurrida). En el referido dictamen, la JLBP le denegó al recurrente el beneficio de libertad bajo palabra.

Por los fundamentos expuestos a continuación, se ***confirma*** la *Resolución* impugnada.

**I.**

El 19 de julio de 2018, la JLBP adquirió jurisdicción sobre el caso del señor Valentín Negrón. El recurrente cumple una sentencia de veinticinco (25) años de reclusión por los delitos de apropiación ilegal agravada, escalamiento agravado, daños, tentativa de robo, restricción a la libertad y conspiración, bajo las disposiciones del

---

[1] Apéndice 2 del recurso de *Revisión Administrativa.*
[2] Notificada el 21 de agosto de 2025.

Código Penal de 2012[3]; y por violación a los Artículos 5.04 y 6.01 de la derogada Ley de Armas Núm. 404-2000[4].

El 14 de junio de 2024, la agencia recurrida evaluó el caso del señor Valentín Negrón. No obstante, el privilegio le fue denegado, pues el hogar propuesto, que era el de su madre, no era viable. Igualmente, le fue denegado por no contar con la corroboración de oferta de empleo y de un amigo consejero[5]. Sin embargo, del expediente administrativo surge un documento fechado del 28 de agosto de 2024, firmado por la Técnico de Servicios Sociopenales, la señora Tania González Colón (TSS González Colón), en el cual esta informó unos cambios que surgieron posterior al referido inicial del caso[6]. Entre los cambios allí informados, se encontraba un nuevo hogar propuesto en casa de la hermana del recurrente.

Es por lo anterior que, el 30 de agosto de 2024, el señor Valentín Negrón presentó una *Moción Solicitando Reconsideración Emita Resolución Interlocutoria y Requiera Investigación de Nuevo Hogar Propuesto y Envío a la Junta de Informe de Corroboración de Oferta de Empleo y Amigo Consejero*[7].

En lo pertinente a la controversia que nos ocupa, surge del expediente ante nuestra consideración que, el 28 de mayo de 2025, la Técnico de Servicios Sociopenales, la señora Emma Ruiz Llaneza (TSS Ruiz Llaneza) presentó el *Informe de Reconsideración de Libertad Bajo Palabra*[8]. En éste, se presentó nuevamente como hogar propuesto la residencia de la madre del recurrente. En cuanto a la oferta de empleo y amigo consejero, permanecieron iguales a las informadas anteriormente. Así pues, evaluada la documentación

---

[3] Ley Núm. 55 de 1 de junio de 2020, según enmendado, conocido como "Código Civil de Puerto Rico" de 2020. 31 LPRA sec. 5311 *et seq.*

[4] Ley Núm. 404 de 11 septiembre de 2000, según enmendada, conocida como la "Ley de Armas de Puerto Rico". 25 LPRA sec. 458c y sec. 459. Ley vigente al momento de los hechos.

[5] Véase, *Resolución* del 1 de julio de 2024, Apéndice VI, págs. 4-7 del *Escrito en Cumplimiento de Resolución* de la JLBP.

[6] Apéndice V del *Escrito en Cumplimiento de Resolución* de la JLBP.

[7] Apéndice VI del *Escrito en Cumplimiento de Resolución* de la JLBP.

[8] Apéndice 1 del recurso de *Revisión Administrativa*.

presentada, el 3 de julio de 2025[9], la JLBP realizó las siguientes determinaciones de hechos:

1. El peticionario se encuentra clasificado en custodia mínima desde el 28 de diciembre de 2019.

2. El 29 de febrero de 2022, al peticionario se le dictó sentencia en probatoria, la cual fue revocada por comisión de nuevo delito.

3. Al peticionario le fue realizada la toma de muestra de ADN desde el 19 de febrero de 2019, según lo dispuesto en la Ley Núm. 175-1998, según enmendada.

4. El peticionario cuenta con historial de uso de sustancias controladas, por lo cual el 31 de agosto de 2015, completó el programa de terapéutico "Transformación de Patrones Adictivos" provisto por el DCR.

5. El 19 de julio de 2023, completó el Programa Psico-Educativo de Aprendiendo a Vivir Sin Violencia, provisto por el DCR, y cuenta con evaluación realizada por la Sección Programa de Evaluación y Asesoramiento (SPEA). Igualmente, consta en el expediente una evaluación psiquiátrica del 19 de abril de 2024.

6. El peticionario propuso residir con su progenitora, Vivian Negrón Torres, en la Urbanización Marisol, Calle 5 # D-4 en el Municipio de Arecibo, Puerto Rico. Esta propuesta de hogar fue corroborada por el DCR, según consta en el Informe de reconsideración de libertad bajo palabra (Informe) del 27 de mayo de 2025. No obstante, no es viable, ya que es el mismo hogar propuesto el año pasado que la Junta determinó que no era viable para propósito de rehabilitación.

7. El peticionario propuso como oferta de empleo a Superiority Wraps and Tint en la Carr. 129 km 8.4 en el Barrio Campo Alegre en el Municipio de Hatillo, Puerto Rico. Esta propuesta de hogar no pudo ser corroborada por el DCR a pesar de las gestiones realizadas.

8. El peticionario propuso como amigo consejero a Santa Ivette Molina López quien reside en el Municipio de Arecibo, Puerto Rico. Esta propuesta fue corroborada por el DCR y es viable[10].

En vista de lo anterior, la agencia recurrida le denegó al señor Valentín Negrón el beneficio de libertad bajo palabra. Esto, debido a que la dirección propuesta no era viable y la propuesta de empleo no pudo ser corroborada.

Inconforme con el dictamen, el 28 de agosto de 2025, el recurrente presentó el recurso ante nuestra consideración y le imputó a la JLBP los siguientes señalamientos de error:

---

[9] Notificada el 21 de agosto de 2025.
[10] Apéndice 2 del recurso de *Revisión Administrativa*, pág. 1.

> Erró la Junta al denegar la lbp al recurrente, no basándose su determinación en prueba real y fehaciente y no hacer un análisis ponderado de toda la documentación que obra en su expediente, documentos, informes, evaluaciones y las mociones radicadas, por lo que no existe evidencia sustancial que la sostenga y la misma fue arbitraria ilegal e irrazonable y procede su revocación por ser contraria a derecho.

> Erró la Junta al denegar la lbp al recurrente el 3 de julio de 2025 y concluir en su determinación de hechos seis (6) que el Sr. Valentín Negrón propuso nuevamente un hogar no viable propuesto en el 2024 en Arecibo, Puerto Rico y no considerar que mediante mociones de 30 de agosto de 2024 y 5 de septiembre de 2024 el recurrente sometió a la Junta nuevo hogar en Vega Baja, Puerto Rico negándose la agencia a emitir Resolución Interlocutoria dirigida al DCR para investigar dicha vivienda para julio de 2025, fecha en que se volvería a considerar su caso por la Junta, por lo que la determinación tomada el 3 de julio de 2025 no se basó en prueba real y fehaciente y de un análisis ponderado de toda la documentación que obra en su expediente, entiéndase los documentos, informes, evaluaciones y mociones, por lo que no existe evidencia sustancial que la sostenga y la misma fue arbitraria ilegal e irrazonable que constituye un craso error de derecho y procede su revocación.

> Erró la Junta al denegar la lbp al recurrente el 3 de julio de 2025 y tomar en consideración el Informe de Ajuste y Progreso del 14 de marzo de 2025 rendido por su T.S.S. y el sometido el 27 de mayo de 2025 por el Programa de Comunidad Norte Central que corroboraron un hogar no propuesto por el recurrente, a sabiendas de que la Junta tenía en su expediente dos mociones desde 2024 informando nuevo hogar que la Junta se negó a ordenar al DCR investigar por lo que la Junta al ejercer su discreción no aplicó su discernimiento de forma razonable incumpliendo su obligación de alcanzar una solución justa en el caso del recurrente y constituye un craso error de derecho que amerita su revocación.

> Erró la Junta al emitir una Resolución que determinó que el recurrente no cumplía los criterios requeridos para beneficiarse de lbo al negarse a investigar el nuevo hogar propuesto que le fue informado desde el 2024, lo que constituyó un error de derecho y un claro abuso de discreción que amerita la revocación la Resolución impugnada.

El 5 de septiembre de 2025[11], emitimos una *Resolución* concediéndole término a la parte recurrida hasta el 29 de septiembre de 2025 para que presentara su alegato en oposición. Así pues, la JLBP compareció mediante *Escrito en Cumplimiento de Resolución.*

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

---

[11] Notificada en igual fecha.

## II.

### -A-

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[12]. Por su parte, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) establece el marco de revisión judicial de estas decisiones[13]. Cónsono con lo anterior, nuestra función revisora se limita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que las origina[14].

Debido a la vasta experiencia y conocimiento especializado que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[15]. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley[16]. Es por esta razón, que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[17]. Hay que señalar que las determinaciones de los organismos administrativos

---

[12] Art. 4006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24(y)(c).

[13] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

[14] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

[15] *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020); *PRHOA v. Confederación Hípica*, 202 DPR 509, 521 (2019).

[16] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).

[17] *Pérez López v. Depto. de Corrección*, 208 DPR 656, 673 (2022); *Super Asphalt v. AFI y otro, supra,* pág. 821; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 394 (2012).

están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[18].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal[19]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[20]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[21].

Ahora bien, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[22].

Si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo

---

[18] *Trigo Margarida v. Junta Directores, supra,* págs. 393-394; *Mundo Ríos v. CEE et al.,* 187 DPR 200, 219 (2012), citando a *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).
[19] *Vélez v. A.R.Pe.,* 167 DPR 684, 693 (2006).
[20] *Super Asphalt v. AFI y otro, supra; González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013); *Trigo Margarida v. Junta Directores, supra,* pág. 394.
[21] *OEG v. Martínez Giraud,* 210 DPR 79, 89 (2022); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35-36 (2018); *Pagán Santiago et al. v. ASR,* 185 DPR 341, 358 (2012).
[22] *OEG v. Martínez Giraud, supra,* pág. 90; *Super Asphalt v. AFI y otro, supra,* pág. 819, citando a *Torres Rivera v. Policía de PR, supra,* pág. 628; *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012).

ante su consideración[23]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[24].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno[25]. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[26].

-**B**-

La Junta de Libertad Bajo Palabra, adscrita al Departamento de Corrección y Rehabilitación fue creada al amparo de la Ley Núm. 118 de 22 de julio de 1974 (Ley Núm. 118)[27]. Esta legislación le otorgó la facultad a la Junta a decretar la libertad bajo palabra a una persona recluida en las instituciones correccionales de Puerto Rico, siempre y cuando se cumplan con los requisitos dispuesto por ley y no se trate de alguno de los delitos excluidos de este beneficio[28]. El beneficio de libertad bajo palabra autoriza que una persona que haya sido convicta y sentenciada a cumplir una condena de reclusión cumpla la última parte de su sentencia fuera de la institución correccional, sujeto al cumplimiento de las condiciones impuestas por la Junta[29].

---

[23] *González Segarra et al. v. CFSE, supra,* pág. 277; *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216-217 (2012); *Pereira Suárez v. Jta. Dir Cond.,* 182 DPR 485, 511 (2011).

[24] *González Segarra et al. v. CFSE, supra; Pereira Suárez v. Jta. Dir Cond., supra,* pág. 513, citando a *Domínguez v. Caguas Expressway Motors, Inc.,* 148 DPR 387, 398 (1999); *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

[25] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales, supra.*

[26] *González Segarra et al. v. CFSE, supra,* págs. 277-278; *Batista, Nobbe v. Jta. Directores, supra,* pág. 217, citando a *Rebollo v. Yiyi Motors, supra.*

[27] 4 LPRA sec. 1501 *et seq.*

[28] Art. 3 de la Ley Núm. 118, *supra,* 4 LPRA sec. 1503.

[29] *Maldonado Elías v. González Rivera,* 118 DPR 260, 275 (1987).

El Tribunal Supremo de Puerto Rico ha expresado que la libertad bajo palabra no es un derecho sino más bien un privilegio[30]. Por ello, la concesión del aludido privilegio recae en la sana discreción de tribunal o de la Junta[31]. A su vez, la libertad bajo palabra se otorga a la persona confinada que satisfaga ciertos criterios personales y de conducta, sujeto al mejor interés de la sociedad y que las medidas logren la rehabilitación moral y económica del confinado beneficiado[32].

En específico, el Artículo 3-D de la Ley Núm. 118[33], enumera los criterios para otorgar el privilegio, los cuales son los siguientes:

(1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.

(2) Las veces que el confinado haya sido convicto y sentenciado.

(3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

(5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

(6) La edad del confinado.

(7) El o los tratamientos para condiciones de salud que reciba el confinado.

(8) La opinión de la víctima.

(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado. (10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.

Por otra parte, para poder implementar las disposiciones de la Ley Núm. 118, *supra,* la Junta adoptó el "Reglamento de la Junta de Libertad Bajo Palabra", Reglamento Número 9603 de 25 de

---

[30] *R Quiles v. Del Valle,* 167 DPR 458, 475 (2006).
[31] *Íd.*
[32] *Rivera Beltrán v. Junta de Libertad Bajo Palabra,* 169 DPR 903, 905 (2007).
[33] 4 LPRA sec. 1503d.

septiembre de 2024 ("Reglamento Núm. 9603"). En la sección 10.1 del Art. X del precitado reglamento se enuncian los criterios que la JLBP deberá considerar al evaluar la solicitud de libertad bajo palabra de un confinado. En lo específico y pertinente a la controversia que nos ocupa, la Sección 10.1 B (8) detalla ciertos criterios de elegibilidad, entre los cuales destacamos los siguientes:

[…]

8. **Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero**.

a. El plan de salida podrá ser en Puerto Rico, en cualquier estado de los Estados Unidos o en cualquier otro país que tenga un tratado de reciprocidad con Estados Unidos.

[…]

**d. Oferta de empleo y/o estudio**

**1. Todo peticionario deberá proveer una oferta de empleo o, en la alternativa, un plan de estudios o adiestramiento vocacional, o estudio y trabajo.**

**11. La oferta de empleo se presentará mediante carta suscrita por la persona que extiende la oferta de empleo al peticionario, incluyendo la siguiente información: (a) Nombre completo, dirección postal, física, electrónica y teléfono(s) de la persona que ofrece el empleo. (b) Nombre, dirección postal, física, electrónica y teléfono(s) y naturaleza del negocio en el cual se ofrece el empleo. (c) Funciones que ejercerá el peticionario y el horario de trabajo.**

[…]

e. Residencia

i. Todo peticionario tiene que indicar el lugar en el cual piensa residir de serle concedida la libertad bajo palabra, bien sea en una residencia o un programa interno.

ii. **De proponer una residencia, el peticionario proveerá el nombre completo y número de teléfono de la persona con la cual residirá, o de algún familiar cercano, así como la dirección física de la residencia. En estos casos, se realizará una investigación sobre la actitud de la comunidad donde propone residir el peticionario, de serle concedida la libertad bajo palabra.** (Énfasis nuestro).

[…]

f. Amigo Consejero

i. El amigo consejero tiene la función de cooperar con la Junta y el Programa de Comunidad del Departamento de Corrección y Rehabilitación, en la rehabilitación del peticionario.

[…]

13. La Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad. (Énfasis nuestro).

### III.

En el caso de autos, el señor Valentín Negrón comparece ante este foro apelativo intermedio y nos solicita que revoquemos la *Resolución* recurrida, toda vez que, la JLBP le negó el beneficio de libertad bajo palabra. Esto, debido a que el hogar propuesto no era viable y no contaba con la corroboración de la oferta de empleo.

Por su parte, la Oficina del Procurador General, en representación de la JLBP, sostuvo que, aun cuando la agencia recurrida advino en conocimiento del nuevo hogar propuesto por el recurrente antes de la presentación de la *Moción de Reconsideración*[34], antes de su *Informe* del 28 de mayo de 2025 y antes de la *Resolución* recurrida, era razonable que la JLBP examinara la viabilidad del nuevo hogar propuesto. Sin embargo, este hecho no cambiaba el que el recurrente incumplió con otro requisito: la falta de empleo.

Por consiguiente, si bien la JLBP debió haber examinado la viabilidad del nuevo hogar propuesto en la etapa en que se informó, la denegatoria del privilegio emitida en julio de 2025 aún se sostiene, basado en la falta del criterio del empleo, debido a que este no pudo ser corroborado, a pesar de las gestiones realizadas para ello. Según adelantamos en la exposición del derecho, la Sección 10.1 B (8) (d) del Reglamento Núm. 9603, *supra*, dispone que todo peticionario deberá proveer una oferta de empleo o, en la alternativa, un plan de estudios o adiestramiento vocacional, o estudio y trabajo.

Se desprende del *Informe de Reconsideración de Libertad Bajo Palabra* del 28 de mayo de 2025 que se entrevistaron a varios empleados del lugar de empleo, pero estos indicaron no conocer al señor Valentín Negrón[35]. El día de la visita, el propietario del empleo

---

[34] De igual forma, como bien señaló la Oficina del Procurador General en su oposición, cualquier cambio al plan de salida institucional no se hace mediante la presentación de mociones de forma directa ante la Junta, sino a través del TTS. Véase, *Escrito en Cumplimiento de Resolución* de la JLBP, pág. 15.

[35] Véase, *Escrito en Cumplimiento de Resolución* de la JLBP, pág. 16.

tampoco se encontraba[36]. Aunque se proveyeron los datos para que éste se comunicara con la TSS Ruiz Llaneza, al momento de la redacción del *Informe,* el propietario no se había comunicado[37]. Por lo tanto, se desconocía si la oferta de empleo estaba aún disponible para el recurrente. Así pues, quedó demostrado que el criterio de oferta de empleo no se cumplió en el caso del recurrente. Por ello, concluimos que la JLBP no abusó de su discreción al denegar al señor Valentín Negrón el privilegio de libertad bajo palabra, ya que este privilegio se concede siempre y cuando se cumplan con todos los requisitos reglamentarios específicamente establecidos en el Reglamento Núm. 9603, *supra*, que estaba en vigor a la fecha en que la agencia evaluó el caso del recurrente en junio de 2025.

## IV.

Por los fundamentos que anteceden, ***confirmamos*** la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[36] *Íd.*
[37] *Íd.*